**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-01068-CMA

LEONA C. VALDEZ,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Social Security Commissioner,

    Defendant.

---

**ORDER REVERSING ALJ'S DECISION DENYING DISABILITY BENEFITS**

---

This matter is before the Court on Plaintiff Leona C. Valdez's appeal of the Commissioner's decision denying her claim for disability benefits. Exercising jurisdiction under 42 U.S.C. § 405(g), this Court reverses the decision of the Administrative Law Judge ("ALJ").

**I. BACKGROUND**

Plaintiff suffers from fibromyalgia, a diffuse neuromuscular disorder often characterized by severe pain. She alleges that her fibromyalgia causes her, among other things, debilitating back pain and depression. She alleged an onset date for her disability of January 15, 2010. (AR at 140-43.) The agency initially denied her claim (AR at 81-83), and she then appeared before an ALJ at an administrative hearing in November 2011, (AR at 40-69).

To support her claim of disability, Plaintiff relied on the testimony of her primary care physician, Dr. Michael Rendler, who had treated her for a little over two years. Prior to the hearing, Plaintiff was also examined by two other medical professionals, Dr. Patrick Timms, a rheumatologist, and Dr. Brett Valette, a psychologist.  These doctors reached somewhat differing conclusions about how Plaintiff's fibromyalgia caused her physical and mental impairments.  As is explained in greater detail below, the ALJ considered the opinions provided by all three of these medical professionals.

On December 1, 2011, the ALJ issued a decision finding Plaintiff was not disabled.  In particular, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light work with a sit/stand option and that her RFC did not preclude her from performing her past work as a telemarketer, order taker, or property manager.  (AR at 30, 34-35.)

The Appeals Counsel declined to review the ALJ's decision (AR at 1-6), making it final for purposes of review by this Court, *see, e.g.*, *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).  Plaintiff now appeals the ALJ's determination to this Court.

## II. <u>STANDARD OF REVIEW</u>

This Court's review of the ALJ's determination is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the Commissioner—through the ALJ—applied the correct legal standards.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less

than a preponderance. *Wall*, 561 F.3d at 1084. In reviewing the record and the arguments of counsel, the Court does not reexamine the issues de novo, *Sisco v. United States Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Thus, even when some evidence may have supported contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## III. <u>ANALYSIS</u>

Plaintiff advances three principal claims on appeal. First, she argues that the ALJ erred in the manner in which he discounted Dr. Rendler's opinions about her impairments. Second, she argues that, as a consequence of the way the ALJ misinterpreted Dr. Rendler's opinions, the ALJ's RFC assessment is not supported by substantial evidence. Third, Plaintiff claims that the ALJ erred in finding her not credible.

The Court largely agrees with Plaintiff on all three counts. As is explained in greater detail below, the ALJ improperly discounted Dr. Rendler's opinions about Plaintiff's physical and mental limitations. In turn, this error infects the ALJ's RFC assessment. Further, this Court finds that the ALJ has provided an insufficient basis for his adverse credibility finding, though not for the precise reasons Plaintiff advanced in her briefing. The Court considers each of Plaintiff's claims in turn.

### A.     DR. RENDLER'S OPINIONS

Plaintiff's first claim is that the ALJ erred in according "no weight" to opinions provided by Dr. Rendler in his responses to two questionnaires about Plaintiff's fibromyalgia. In the first questionnaire, Dr. Rendler primarily discussed Plaintiff's physical limitations; in the second, he discussed her mental limitations.

The Court largely concurs in Plaintiff's assessment that the ALJ erred in how he considered each questionnaire. First, the ALJ applied the incorrect legal standard in considering Dr. Rendler's opinion in both questionnaires. Second, he provided insufficient or improper bases for discounting each of Dr. Rendler's opinions.

####     1.     Correct Standard

As an initial matter, the ALJ failed to apply the proper legal standard in considering Dr. Rendler's opinions. Because Dr. Rendler was Plaintiff's treating physician, his opinion generally should receive "more weight" than other sources. 20 C.F.R. § 404.1527(d)(2). Further, in accord with the Tenth Circuit's decision in *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003), the ALJ should have considered a number of factors in deciding to accord "no weight" to Dr. Rendler's opinion.

*Watkins* provides a two-step process for considering the opinion of a treating physician. At *Watkins* step one, the ALJ determines whether the opinion is entitled to "controlling weight" by assessing whether it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at 1300 (quoting SSR 96–2p, 1996 WL 374188, at *2). If the ALJ determines that the opinion is not entitled to "controlling

weight," he must proceed to the second *Watkins* step, in which he must consider a number of factors outlined in 20 C.F.R. § 404.1527 and 416.927, and then provide sufficient reasoning for the weight, if any, he assigns the opinion. *Watkins*, 350 F.3d at 1300.

The ALJ never referenced this two-step process, though he appears to have considered (albeit in an erroneous, ad hoc, and cursory manner) some of the factors addressed at *Watkins* steps one and two. *See, e.g.*, (AR at 33.) On remand, the ALJ should fully consider this framework—in particular, the *Watkins* factors that he has relied upon in deciding how much weight to accord to the opinions of the various medical professionals who examined Plaintiff.[1]

    2.    <u>Errors in Considering Dr. Rendler's Questionnaire Responses</u>

Beyond not applying the proper framework for considering the opinion of a treating physician, there are a number of problems with the rationales the ALJ offered to discount Dr. Rendler's two questionnaire responses. The Court considers these flaws below.

---

[1] While the ALJ should consider the *Watkins* framework, it is unnecessary that he "apply expressly" all of the factors enumerated in that opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). This admonition seems particularly important with fibromyalgia claims, where a diagnosis is often based largely on a patient's subjective complaints of pain. As a result, it is more difficult to establish concrete metrics for determining when the ailment becomes disabling. *Cf.* Dara E. Purvis, *A Female Disease: The Unintentional Gendering of Fibromyalgia Social Security Claims*, 21 Tex. J. Women & L. 85 (2011) (examining past problems with assessing fibromyalgia disability claims and providing a history of the Commissioner's response to these issues). The Social Security Administration has developed a number of additional rulings to facilitate assessment of fibromyalgia claims. *See* SSR 12-2P, 2012 WL 3104869 (July 25, 2012) (a ruling that specifically addresses fibromyalgia claims); SSR 96-7p, 61 Fed. Reg. 34483-01 (a ruling that addresses how to assess credibility determinations related to pain). All of these authorities could prove useful in assessing Plaintiff's claims to disability on remand.

*a)     Physical Limitations Questionnaire*

First, the ALJ erred in his assessment of Dr. Rendler's responses in the physical limitations questionnaire. As relevant here, Dr. Rendler's opinion in this questionnaire generally supported Plaintiff's contention that the severity of her fibromyalgia leaves her physically incapable of operating in most work environments. In particular, Dr. Rendler suggested that Plaintiff's fibromyalgia: (1) would interfere constantly with her attention and concentration, (2) allowed her to sit for only about two hours in an eight-hour day, (3) limited her to standing or walking in combination for about two hours in an eight-hour day, (4) required that she receive a rest of between fifteen to thirty minutes every one to two hours during a workday, and (5) would cause her to be absent from work three or more times a month. (AR at 281-88.)

The ALJ's rationale for according no weight to this opinion was two-fold. First, the ALJ claimed that Dr. Rendler's opinion was "not supported by his own office notes or any objective findings or by the other evidence of record." Second, the ALJ reasoned that Dr. Rendler's opinion was "based on very little contact with [Plaintiff] as he sees her only three to four times a year." (AR at 32.)

Neither of these rationales is supported by substantial evidence.

*(i)     Office Notes and Objective Findings*

First, contrary to the ALJ's position, Dr. Rendler's opinion was in fact supported by his office notes. For example, on October 10, 2010, Dr. Rendler made handwritten (and difficult-to-decipher) notes about a physical exam he conducted in which he found

that Plaintiff's "back [was] tender to palpation, cervical, thoracic, and lumbar spine.[2]" (AR at 247.) Similarly, on February 14, 2010, Dr. Rendler noted that Plaintiff "does have sensitivity and tender areas to palpation in the periarticular areas." (AR 248); *see also* (AR at 251) (February 18, 2009 finding from Dr. Rendler that Plaintiff had "general weakness, tenderness to palpation . . . [and a] worse neck/back").

Further, these physical examinations would appear to constitute "objective finding[s]" that would support a doctor's conclusions about a claimant's alleged disabilities. At the least, if there were reason to question the objectivity of Dr. Rendler's physical examinations or their sufficiency for purposes of establishing that Plaintiff was disabled, the ALJ failed to provide such analysis.

Finally, this Court cannot credit the ALJ's vague assertion that "the other evidence of record" contradicts Dr. Rendler's position. The ALJ did not explain what "other" evidence he was referencing. Moreover, as was discussed above, it seems that the ALJ in fact forgot about at least some "other evidence of record"—namely, Dr. Rendler's examination notes—and this evidence in fact **supports** rather than **contradicts** the position Dr. Rendler took in the fibromyalgia questionnaire.[3]

---

[2] The Court presumes that the references to "cervical, thoracic, and lumbar spine" denote the regions in Plaintiff's back that were tender.

[3] The ALJ also discussed a March 2009 report from Dr. Timms, who explained the results of a musculoskeletal exam that revealed numerous "tender points" in various parts of Plaintiff's back and "suggest[ed] a diagnosis of fibromyalgia." *See* (AR at 31) (citing (AR at 238-39)). The ALJ provides only a cursory analysis of Dr. Timms's findings and seems to have discounted this doctor's March report because Plaintiff later reported that subsequent prescription medication alleviated some of Plaintiff's symptoms. (AR at 31.) If this is the reason that Dr. Timms's report does not constitute "other" or "objective" evidence to support Dr. Rendler's position, the ALJ should explicitly say so—indeed, in his decision, the ALJ provided an insufficient explanation of how he weighed Dr. Timms's opinion.

### (ii)  Contact with Plaintiff

Second, the ALJ improperly discounted Dr. Rendler's opinion by concluding that because Dr. Rendler saw Plaintiff only "three to four" times a year, he was unable to offer an authoritative opinion about Plaintiff's disabilities.

As relevant here, when an ALJ is considering how to weigh the opinion of a treating source, the Social Security Administration regulations dictate that:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 404.1527(c)(2)(i).

This regulation imposes no quota for a minimum number of visits necessary to allow a doctor to form an opinion entitled to "more weight" by the ALJ.  Rather, the regulation envisions a more holistic approach: if a treating source has seen a claimant "a number of times and long enough to have obtained a longitudinal picture of your impairment," that opinion is entitled to more weight.  *See also* 20 C.F.R. § 404.1502 (noting that an acceptable "frequency" of visits or treatments with a medical source will vary based on the "accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).").

The ALJ's decision does not apply this standard and provides a cursory gloss to important facts that potentially bear upon the relationship between Plaintiff and Dr. Rendler.  As an initial matter, over the course of their treating relationship, Plaintiff and Dr. Rendler had averaged approximately six visits annually—not just three to four.

*See* (Doc. # 12 at 16 n.4) (citing AR at 247-48, 250-59, 287-88).  Further, while the record reveals that these visits were concentrated in Plaintiff's first year of treatment and varied as to the amount of attention Dr. Rendler dedicated to examining Plaintiff, Dr. Rendler never wavered in his diagnosis about Plaintiff's fibromyalgia.  *Compare, e.g.*, (AR at 247) (describing an October 2010 visit that included a physical examination of parts of Plaintiff's body that were tender or painful to touch, in which Dr. Rendler concluded Plaintiff had fibromyalgia), *with* (AR at 250) (describing a February 2010 visit where Dr. Rendler seems to have checked only Plaintiff's vital signs, prescribed fibromyalgia medication, and filled out paperwork).

To be sure, Dr. Rendler's overall level of contact with Plaintiff and the limited number of in-depth examinations he performed may not be sufficient for Dr. Rendler to obtain a "longitudinal picture of [Plaintiff's] impairment,"[4] but the ALJ did not explain why this is the case.  In short, if the ALJ wishes to discount Dr. Rendler's opinion on the basis of the frequency of his contact with Plaintiff, the ALJ needs to provide more analysis applying the standard announced in the regulations to the particular facts of this case.

                b)      *Mental Limitations Questionnaire*

The ALJ also erred in the manner in which he accorded "no weight" to Dr. Rendler's responses in a questionnaire about Plaintiff's limitations in her mental functioning.  This questionnaire is a two-page check-the-box form in which Dr. Rendler described Plaintiff's level of mental impairment in a number of different categories.

---

[4] The Court takes no position on this question.

In completing the questionnaire, Dr. Rendler was limited to identifying a limitation as non-existent, slight, moderate, marked, or extreme.  (AR at 279-80.)

Ultimately, Dr. Rendler determined that Plaintiff had some "marked" difficulties in mental functioning, which were principally related to her ability to remember and carry out instructions or engage in higher-level reasoning.  Dr. Rendler further determined that Plaintiff had some slight and moderate limitations, principally related to her ability to make decisions, maintain concentration, and interact socially.  Dr. Rendler did not provide much additional explanation for his conclusions and merely noted that "fibromyalgia and depression are conditions consistent with [the] limitations" he considered to be applicable.  (*Id.*)

In giving no weight to Dr. Rendler's opinion in this questionnaire, the ALJ reasoned as follows:

> Dr. Rendler is not a qualified mental health practitioner and the number of marked limitations he indorses would require the claimant to be hospitalized.  The claimant has never been hospitalized for psychiatric reasons.  The assessment is contrary to the assessment of Dr. Valette, who is a qualified mental health practitioner.

(AR at 32.)

This analysis is deficient in a number of respects.  As an initial matter, ALJ provides no authority in support of his position that because a physician concludes that a patient has a number of marked limitations in mental functioning, that patient requires "hospitalization."[5]  Further, an ALJ, who is not a medical professional, is not qualified to

---

[5] Indeed, "marked" limitations are less severe than "extreme" limitations, yet under the ALJ's proposed standard, persons with either type of limitation would appear to require the same form of serious (yet ill-defined) medical intervention.

determine when a disability is severe enough to require hospitalization. *Cf. Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996) (noting that an ALJ "[cannot] interpose his own 'medical expertise' over that of a physician").

Finally, the ALJ's two-sentence explanation of why he credited the opinion of Dr. Valette over that of Dr. Rendler insufficiently explains both why he accorded no weight to the opinion of a treating physician and why Dr. Valette's opinion is both more authoritative and dispositive as to a finding of non-disability. *Cf. Watkins*, 350 F.3d at 1301 (holding that if the ALJ completely rejects the opinion of a treating physician he must provide "specific, legitimate reasons" for doing so").

In sum, there may be legitimate reasons to discredit Dr. Rendler's mental functioning assessment and make the same finding as to Plaintiff's mental functioning, but if there are, the ALJ has yet to enunciate them with the requisite specificity.

### 3. Conclusion and Instructions on Remand

The ALJ's decision to discount Dr. Rendler's opinions in the two questionnaires is not supported by substantial evidence. Further, this case does not present one of those "exceptional circumstance[s]" in which the ALJ's errors are harmless. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). To the contrary, Dr. Rendler made a number of specific findings about the limitations caused by Plaintiff's fibromyalgia in each questionnaire, and these limitations would significantly circumscribe Plaintiff's ability to work if they do indeed provide an accurate portrayal of her impairments.

This Court therefore remands this case for further consideration by the ALJ of Dr. Rendler's opinion on both of the questionnaires. On remand, the ALJ should

evaluate Dr. Rendler's opinions in accord with the framework adopted by the Tenth Circuit in *Watkins*.[6]

## B.  RFC ASSESSMENT

Plaintiff's second claim is that "[t]he ALJ failed to properly analyze the medical evidence related to both Plaintiff's physical and mental limitations in assessing her RFC."  (Doc. # 12 at 19.)  Plaintiff alleges two deficiencies in the RFC analysis, which overlap with her arguments regarding the manner in which the ALJ discounted Dr. Rendler's opinion.  The Court largely agrees with Plaintiff as to each of these arguments and considers them in turn.

First, Plaintiff alleges that the ALJ failed to consider some probative evidence in his RFC because he failed to discuss the aforementioned physical examination notes from Dr. Rendler.  (Doc. # 12 at 20-21.)  As discussed above, the ALJ erred in failing to consider these notes: on remand, in assessing Plaintiff's RFC, he must consider and describe the amount of weight he will accord them.  *Cf. Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[T]he ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

---

[6]  This conclusion is based only on the rationales for disregarding these two opinions that were advanced by the ALJ in his December 2011 decision. The government proffers a number of additional reasons, not considered by the ALJ, to discount Dr. Rendler's opinions. *See, e.g.*, (Doc. # 15 at 10) (suggesting that Dr. Rendler's treatment notes were conclusory and inconsistent with what he stated in the physical limitation questionnaire); (*id.* at 5, 12) (raising similar arguments for the mental health questionnaire).  These arguments are irrelevant for present purposes because they are post-hoc rationalizations used to justify the ALJ's position and, therefore, do not provide an appropriate basis for affirmance. *See, e.g.*, *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

Second, Plaintiff argues that the ALJ provided insufficient analysis to explain his interpretation of Dr. Valette's assessment of Plaintiff's mental limitations. (Doc. # 12 at 22-23.) Again, as explained above, the ALJ needs to provide more than a cursory analysis of the mental health evaluations from both Drs. Vallette and Rendler. Such an analysis will be a necessary part of any RFC completed by the ALJ.

In sum, the RFC assessment was a house built on a bad foundation. Because the ALJ did not properly consider the opinions of Drs. Rendler or Valette, *see supra* Part III.A, the RFC assessment itself is improper and will need to be reconsidered on remand.[7]

## C.    PLAINTIFF'S CREDIBILITY

Plaintiff's third claim is that the ALJ erred in making his adverse credibility determination. In particular, Plaintiff takes exception to the fact that the ALJ found Plaintiff not credible because she had been receiving unemployment during the same time she had been requesting disability. (AR at 33.) Further, on Plaintiff's interpretation of the ALJ's opinion, Plaintiff's application for unemployment benefits was the only and dispositive rationale that the ALJ used in making his adverse credibility finding. Plaintiff claims that this rationale is insufficient by itself to discount Plaintiff's credibility.

---

[7] In support of his position in the RFC that Plaintiff had non-severe mental limitations, the ALJ asserted that Plaintiff "has never received any treatment from a mental health practitioner nor does the evidence of record support a finding of a severe impairment due to mental health problems as the claimant denied any depression or symptoms related to depression." Plaintiff does not appear to dispute that these are valid rationales for considering the severity of mental limitations—she only disputes that these are insufficient by themselves in light of the other evidence in the record. *See* (Doc. # 12 at 23-24.) The Court finds that this finding was supported by substantial evidence, though it still must remand the cause to the ALJ for the reasons stated above.

This basis for attacking the ALJ's credibility determination fails.  As an initial matter, Plaintiff concedes that at least when considered with other factors, the fact that a disability claimant has also applied for unemployment benefits can play into an ALJ's adverse credibility determination.  (Doc. # 12 at 24); *see also Lately v. Colvin*, -- F. App'x --, No. 13-1131, 2014 WL 1227632, at *3 (10th Cir. Mar. 26, 2014) (affirming an ALJ's adverse credibility finding that took into account her collection of unemployment benefits, among other factors).

Further, this Court cannot concur in Plaintiff's position that the only rationale the ALJ used to discount Plaintiff's credibility was the one related to her receipt of unemployment benefits.  To the contrary, the ALJ made a number of other observations that **could** support an adverse credibility finding.  *See, e.g.*, (AR at 33) ("There are no objective findings to support the claimant's allegations for impairment due to migraine headaches."); (*id.*) ("The extreme limitations testified to by the claimant at the hearing are not supported by any objective evidence in the record or even by the statements made by the claimant to examining sources.")

At the same time, although these findings **could** figure into an adverse credibility finding, that does not mean that they **did** in this case.  Indeed, the central deficiency in the ALJ's credibility determination is his failure to connect his disparate observations about Plaintiff to a finding as to her credibility.

"It is well established that an ALJ's findings with respect to a claimant's credibility should be closely and affirmatively linked to substantial evidence and

not just a conclusion in the guise of findings." *Hardman v. Barnhart,* 362 F.3d 676, 678–79 (10th Cir. 2004) (internal quotation marks omitted). The ALJ's failure to explicitly link his credibility determination to specific findings about Plaintiff undermines his analysis on this matter. It must be corrected on remand.[8]

## IV. CONCLUSION

Accordingly, it is ORDERED that the ALJ's denial of social security disability benefits is REVERSED. This case is REMANDED to the Commissioner for proceedings consistent with this Order.

DATED: May __13__, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[8] This same failure to link findings to specific determinations is an obstacle to understanding the relevance of a long paragraph in the ALJ's decision that precedes the discussion of the aforementioned questionnaires and discusses Dr. Rendler's work. (AR at 31-32). Plaintiff advances a number of arguments for why the analysis in this paragraph is flawed or imprecise. *See* (Doc. # 12 at 10-14.) The ALJ, however, never explicitly connected any of the issues raised in this long paragraph to the separate portions of his opinion in which he discussed the two questionnaires or the RFC. If the ALJ was implicitly relying on reasoning in this paragraph, he should make such reasoning explicit on remand and should address the alleged deficiencies raised by Plaintiff.